IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| VIOLA RESENDEZ and<br>RAUL RESENDEZ,<br><br>Plaintiffs,<br><br>v.<br><br>PFIZER, INC., JACQUELINE GUERRERO,<br>BOB DAVIS, JEANNE L. JALUFKA,<br>KYLE M. NELSON, JASON D. HAHN,<br>ROBERT G. VIAL, KATHRYN K. TRUITT,<br>KARI A. McLUHAN, REYNALDO<br>RIOJAS, FRANCISCO MEZA, JACK<br>BARINEAU, ERICA ZEPLIN, DEBORAH<br>QUINONES, W. LANCE GOODSON,<br>KEELY RODRIGUEZ, LEAH SILVA,<br>DANIEL PONCE, CELESTE ESCOBAR,<br>JILL GUIDRY, DANIEL TOWNSEND and<br>LYNSEY ADAME,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. C-07-256<br><br>JURY REQUESTED<br><br>*Pending Transfer to MDL-1699*<br>(*In re Bextra and Celebrex Marketing,*<br>*Sales Practices and Prods. Liab. Litig.*) |

## DEFENDANT PFIZER INC.'S NOTICE OF REMOVAL

TO:    The United States District Court for the Southern District of Texas, Corpus Christi
Division.

NOW COMES Defendant Pfizer Inc. (incorrectly named as "Pfizer, Inc." and hereinafter

"Pfizer"), and files this Notice of Removal of said cause to the United States District Court for

the Southern District of Texas, Corpus Christi Division pursuant to 28 U.S.C. §§ 1332 and 1441.

In support thereof, Pfizer respectfully would show the Court as follows:

**I.**

**Introduction**

A.    **The Multi-District Litigation Proceedings**

This is a pharmaceutical product liability case in which Plaintiffs contend they sustained

injuries from Celebrex®, a prescription medication co-promoted and marketed at times by

Pfizer. The Judicial Panel on Multidistrict Litigation ("JPML") has consolidated pretrial proceedings in personal injury actions relating to Celebrex® pursuant to 28 U.S.C. § 1407 and assigned the litigation to the Honorable Charles R. Breyer of the United States District Court for the Northern District of California (the "MDL Court"). *See In re Bextra & Celebrex Mktg., Sales Pracs. & Prods. Liab. Litig.*, 391 F. Supp. 2d 1377 (J.P.M.L. 2005). Because Plaintiffs allege personal injuries from Celebrex®, this case will be subject to transfer to that court as a "tag-along action." *See id.* at 1377, n.1; RULES 1.1 & 7.4(A) OF RULES FOR MULTIDISTRICT LITIGATION UNDER 28 U.S.C. § 1407, 1999 F.R.D. 425 (J.P.M.L. 2001).

**B.     Plaintiffs' Lawsuit**

On April 6, 2007, Plaintiffs Viola and Raul Resendez filed this personal injury action against Pfizer in the 79th Judicial District Court of Jim Wells County, Texas, Cause No. 07-04-45743, alleging they sustained damages as a result of Viola Resendez's use of Celebrex®. *See* PLAINTIFFS' ORIGINAL PETITION ("PETITION") at 2 (Exhibit 2B). Plaintiffs contend that Pfizer, the manufacturer of Celebrex®, is liable for their alleged injuries under theories of strict liability, negligence, breach of warranties, and fraud. *See generally* PETITION at 7-15.

Plaintiffs' lawsuit also names as defendants twenty-one (21) current or former Pfizer field representatives (often called "detailers") from around and outside the state, whom Plaintiffs allege share their Texas citizenship.[1] As Pfizer detailers, the named employees are responsible for making physicians aware of Pfizer's products, so that the doctors can consider whether to prescribe them for particular patients. *See, e.g.,* DECLARATION OF JACQUELINE GUERRERO ("GUERRERO DECL.") ¶ 3 (Exhibit 6A). Plaintiffs maintain that these individual employees "called on doctors and hospitals" and "were in a position to make representations about the risks

---

[1] Two of the named detailers – Kari McLuhan and Jill Guidry – are not Texas citizens, but rather are citizens of Arizona and Louisiana, respectively. *See* DECLARATION OF KARI A. MCLUHAN ("MCLUHAN DECL.") ¶ 3 (Exhibit 6H); DECLARATION OF JILL GUIDRY ("GUIDRY DECL.") at ¶ 3 (Exhibit 6S).

associated with the use of Celebrex®," and then obliquely suggest – with no specific supporting factual allegations – that "Defendants" failed to advise those unnamed health care providers of certain risks. *See* PETITION at 7; *see, e.g., Bell Atl. Corp. v. Twombly*, ___ U.S. ___, 127 S. Ct. 1955, 1964-65 & n. 3 (May 21, 2007) (holding that under Rule 8 a plaintiff must plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action"; instead, "[f]actual allegations must be enough to raise a right to relief above the speculative level"). The gravamen of Plaintiffs' complaint against these employees, thus, is that they failed to warn of potential risks of Celebrex®.

Plaintiffs, however, also plead generally that "Defendants" are liable under product liability and breach of warranty theories. Assuming these theories are directed at the detailers as well as Pfizer, they are not viable in this case under Texas law *given that the factual proof submitted with this removal negates any possible suggestion that the individual employees are "sellers" of prescription drugs*.

Plaintiffs and Pfizer are of diverse citizenship. The individual Pfizer detailer employees have been improperly joined[2] in an effort to obstruct Pfizer's statutory right to removal. Pfizer acknowledges that this Court previously entered orders remanding certain actions involving non-diverse detailers in the Vioxx® litigation upon a finding they were not improperly joined. *See, e.g., Del Bosque v. Merck & Co., Inc.*, No. C-06-510, 2006 WL 3487400 (S.D. Tex. Dec. 1, 2006). As demonstrated below, however, this case is distinguishable from those prior decisions on a number of grounds. For instance, this Court held that the removing defendant in those cases failed to provide any reason why the plaintiffs could not recover against its local representatives under Texas' product liability laws. *Id.* at *2 n.2. The same is not true here. *See* discussion,

---

[2] Courts historically have called this the "fraudulent joinder" doctrine. However, in *Smallwood v. Illinois Central R.R. Co.*, 385 F.3d 568, 571 n.1 (5th Cir. 2004) (en banc), the Fifth Circuit Court of Appeals adopted the term "improper joinder" as being more consistent with the related statutory language. Pfizer, consequently, uses this phraseology in this Notice.

*infra*, Part III.C.1.  Unlike the defendant in *Del Bosque*, Pfizer has presented specific declaration evidence rebutting Plaintiffs' scant factual allegations involving the detailers.  Among other things, that evidence establishes that the Pfizer detailers are not "sellers" of Celebrex® under Texas law, but rather are employees of Pfizer – which, in turn, is the distributor of Celebrex® and the "seller" of the product in question.  Accordingly, there is no reasonable possibility they could be liable to Plaintiffs based on the theories alleged in the complaint.  *See, e.g.,* RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 20 cmt. g (1998) (stating that a product distributor's sales personnel are not subject to individual liability as seller of a product under terms of the Restatement).  In fact, to hold the individual employees liable in the circumstances presented would run contrary to the well-established notion that an agent is not subject to liability for torts committed by the agent's principal.  *See, e.g., Tri v. J.T.T.*, 162 S.W.3d 552, 562 (Tex. 2005) (explaining "'individual liability arises only when the officer or agent owes an independent duty of reasonable care to the injured party apart from the employer's duty.'") (quoting *Leitch v. Hornsby*, 935 S.W.2d 114, 117 (Tex. 1996)).  "[T]here is no principle of 'respondeat inferior.'"  RESTATEMENT (THIRD) OF AGENCY § 7.01 cmt. d (2006).[3]

        In comparable cases, as set forth below, one Texas federal court after another has held that similar allegations against drug manufacturers' individual employees have no reasonable possibility of success under Texas law.  As the Eleventh Circuit Court of Appeals recently held, it has become a "common strategy" for plaintiffs in pharmaceutical product liability cases to name local detailers as defendants in an effort to defeat the diverse drug manufacturer's right to remove a case to federal court.  *See Legg v. Wyeth*, 428 F.3d 1317, 1320 (11th Cir. 2005).  A federal MDL Court overseeing one such pharmaceutical product liability litigation bluntly

---

[3] Moreover, *Del Bosque* occurred before the Supreme Court's decision in *Bell Atlantic* clarified the factual pleading required to state a claim with respect to Rule 8, even apart from the heightened requirements under Rule 9.  *See infra* at Part III.D.

characterized such tactics as "a sham, at the unfair expense not only of [the diverse pharmaceutical company] but of the many individuals . . . that are being unfairly dragged into court simply to prevent the adjudication of lawsuits against [the pharmaceutical company], the real target, in a federal forum." *Anderson v. Am. Home Prods. Corp.*, 220 F. Supp. 2d 414, 425 (E.D. Pa. 2002). Those decisions found the detailers to be improperly joined. Likewise, the improper joinder of these individual employees in the current case does not defeat diversity jurisdiction.[4]

This action is one in which this Court has original subject matter jurisdiction under the provisions of 28 U.S.C. § 1332, and is one which may be removed to this Court by Pfizer pursuant to the provisions of 28 U.S.C. § 1441(a), in that, excluding the improperly joined defendants, it is a civil action between citizens of different states, and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. Copies of all process, pleadings, and orders filed in state court are attached hereto.

## II.

### Diversity of Citizenship

Plaintiffs Viola and Raul Resendez are, and were at the time this suit was filed, residents of Jim Wells County and citizens of the State of Texas, *see* PETITION at 2, and, thus, they are Texas citizens for purposes of determining federal diversity jurisdiction.

---

[4] Indeed, Plaintiffs' counsel has named *the same twenty-one detailers* in at least eleven different cases filed all over the State of Texas – from Starr County in the south to Tarrant County in the north – despite the fact that at least one of the named defendants never even detailed Celebrex® at all, *see, e.g.,* DECLARATION OF FRANCISCO MEZA ("MEZA DECL.") ¶ 4 (Exhibit 6J), and others never detailed the product in certain geographic areas. *See, e.g.,* DECLARATION OF W. LANCE GOODSON ("GOODSON DECL.") ¶ 7 (attesting he never detailed Celebrex® in Jim Wells County) (Exhibit 6N). The fact that Plaintiffs' counsel in these cases have indiscriminately thrown the same Pfizer detailers into their lawsuits despite lacking any factual connection to their alleged injuries reflects their scattershot approach to attempting to defeat federal jurisdiction.

Defendant Pfizer Inc. was at the time this suit was filed, and is presently, a corporation organized under Delaware law with its principal place of business in New York. *See* PETITION at 2. It therefore is considered a citizen of both Delaware and New York for jurisdictional purposes. *See* 28 U.S.C. § 1332(c)(1).

Defendant employee Kari A. McLuhan is, and was at the time this suit was filed, a resident and citizen of the State of Arizona. *See* MCLUHAN DECL. at ¶ 3 (Exhibit 6H).

Defendant employee Jill Guidry is, and was at the time this suit was filed, a resident and citizen of the State of Louisiana.[5] *See* GUIDRY DECL. at ¶ 3 (Exhibit 6S).

Defendant employees Jacqueline Guerrero, Bob Davis, Jeanne L. Jalufka, Kyle M. Nelson, Jason D. Hahn, Robert G. Vial, Kathryn K. Truitt, Reynaldo Riojas, Francisco Meza, Jack Barineau, Erica Zeplin, Deborah Quinones, W. Lance Goodson, Keely Rodriguez, Leah Silva, Daniel Ponce, Celeste Escobar, Daniel Townsend, and Lynsey Adame (collectively referred to as the "detailers") were at the time this suit was filed, and are presently, residents and citizens of the State of Texas. *See* PETITION at 2-4. However, they are improperly joined in an attempt to prevent removal, and therefore, their citizenship is disregarded for purposes of determining diversity jurisdiction. A non-diverse defendant is deemed to be improperly joined when there is no reasonable basis to predict that the plaintiff could establish a cause of action against that party in state court. *See Smallwood v. Illinois Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc). As discussed below, there is no reasonable basis to predict that Plaintiffs could establish a claim against the in-state employee detailers named as defendants in this case.

---

[5] In any event, Defendants McLuhan and Guidry are improperly joined and/or nominal parties for the same reasons discussed below with respect to the other detailers.

## III.

## The Detailer Defendants
## Are Improperly Joined

### A.    The improper joinder standard.

The improper joinder doctrine prevents plaintiffs from defeating diversity jurisdiction simply by naming a defendant who shares a plaintiff's state citizenship.  28 U.S.C. § 1441(b) (providing for removal jurisdiction in diversity cases "if none of the parties in interest *properly joined and served as defendants* is a citizen of the State in which such action is brought") (emphasis added); *see generally Wecker v. Nat'l Enameling & Stamping Co.*, 204 U.S. 176, 186 (1907) ("The Federal courts should not sanction devices intended to prevent a removal to a Federal court where one has that right."); *Legg*, 428 F.3d at 1320 (recognizing "common strategy" in pharmaceutical product liability actions of naming non-diverse local defendants against whom there is no legitimate claim in an effort to defeat pharmaceutical company's removal rights); *see also McKinney v. Bd. Of Md. Cmty. College*, 955 F.2d 924, 928 (4th Cir. 1992) ("Congress created the removal process to protect defendants.  It did not extend such protection with one hand, and with the other give plaintiffs a bag of tricks to overcome it.").

Improper joinder is established by, *inter alia*, the "'inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'"  *Smallwood v. Illinois Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc) (quoting *Travis v. Irby*, 326 F.3d 644, 646-47 (5th Cir. 2003)); *accord Boone v Citigroup, Inc.*, 416 F.3d 382, 388 (5th Cir. 2005).  In other words, removal is appropriate and the citizenship of a non-diverse defendant is disregarded where "there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant."  *Smallwood*, 385 F.3d at 573.  The Fifth Circuit has emphasized that "[a] 'mere theoretical possibility of recovery under local law' will not preclude a finding of improper joinder."  *Id*. at 573 n.9 (quoting *Badon v. RJR Nabisco, Inc.*, 236 F.3d

282, 286 n.4 (5th Cir. 2000)).  There must be a "*reasonable* basis" for predicting that the plaintiff might establish the non-diverse defendant's liability on the pleaded claims to warrant remand. *Griggs v. State Farm Lloyds*, 181 F.3d 694, 699 (5th Cir. 1999) (emphasis added).

Further, merely pleading a cause of action against a non-diverse defendant is insufficient to show that the plaintiff has a reasonable possibility of recovery against that party.  The court is authorized to look beyond the pleadings and engage in a summary judgment-type inquiry to determine whether improper joinder exists.  *Ross v. Citifinancial, Inc.*, 344 F.3d 458, 462-63 (5th Cir. 2003) ("For fraudulent joinder *vel non*, it is well established that the district court may 'pierce the pleadings' and consider summary judgment type evidence."); *Badon v. RJR Nabisco Inc.*, 224 F.3d 382, 389-90 (5th Cir. 2000) ("*Badon I*") ("[W]e have consistently recognized that diversity removal may be based on evidence outside the pleadings."); *Burden v. General Dynamics Corp.*, 60 F.3d 213, 217 n.18 (5th Cir. 1995) (collecting cases that authorize court to look beyond pleadings); *Legg*, 60 F.3d at 1322-23 (holding that the district court committed legal error and abused its discretion in failing to consider undisputed affidavits submitted by detailers of defendant drug manufacturer in support of the removal of a product liability action).

### B.    The Plaintiffs' allegations.

Whether removal to federal court is appropriate is determined "on the basis of claims in the state court complaint as it exists at the time of removal."  *Cavallini v. State Farm Mut. Auto. Ins. Co.*, 44 F.3d 256, 264 (5th Cir. 1995).  Aside from listing the individual employee detailers in the "Parties" section of the Petition, Plaintiffs' *sole mention* of the detailers appears in the following two sentences:

> The Sales Representative Defendants called on doctors and hospitals and were in the business of profiting from the design, manufacture, marketing, distribution, and/or sales of the prescription drug Celebrex®.  The Sales Representative Defendants were in a position to make representations about the risks associated with the use of Celebrex®.

PETITION at 7.   The remainder of the Petition's allegations refers merely to "Defendants" generally, without pleading any specific factual support for a claim against any individual employee.[6]

**C.    Plaintiffs fail to state any viable claims against the detailer defendants.**

**1.    *Any product-liability or breach of warranty-type claims cannot establish liability on behalf of the employee detailers.***

Plaintiffs' claims against the detailer employees fail as a matter of Texas substantive law. For instance, Plaintiffs allege generally that "Defendants" are liable under product liability and breach of warranty theories.  *See* PETITION at 7-10, 11-12.  Assuming *arguendo* these allegations are directed at the individual Pfizer employees, they do not state a valid claim because the detailers are not "sellers" of the product in question.   Rather, the evidence establishes they simply are employees of the product's "seller" – which is Pfizer.  *In re Diet Drugs Prods. Liab. Litig.*, No. 03-20546, 2004 WL 1535828, *10 (E.D. Pa. July 6, 2004) ("While the product's 'seller' owes the consumer a duty to warn of a product's dangers, [the pharmaceutical manufacturer], and not the sales representatives, was the 'seller.'") (applying Texas law); *see also Gordon v. Pfizer Inc.*, No. CV-06-RRA-703-E, 2006 WL 2337002, at *7 (N.D. Ala. May 22, 2006) (holding that Pfizer's detailer's "affidavit constitutes affirmative proof . . . that he is not a 'seller' or 'manufacturer.'  To the contrary, he is simply a 'detailer' on behalf of his employer, Pfizer" and therefore is fraudulently joined); *DaCosta v. Novartis AG*, No. CV-01-800-BR, 2002

---

[6] In any event, these kinds of general allegations against "Defendants," without alleging any actionable facts specific to the detailers, do not state a claim against the in-state defendants sufficient to defeat diversity jurisdiction.  *See, e.g., Griggs*, 181 F.3d at 699 (affirming decision denying remand where state-court complaint did not allege actionable facts specific to non-diverse defendant).  Indeed, Plaintiffs do not specifically allege that any individual detailers ever called upon or communicated with them or with the prescribing physician.  This is an essential element of their causation case – the alleged acts of the employees must have caused or contributed to the plaintiff having taken the drug.  As set forth below, the employee defendants' declarations have negated that they ever communicated with Plaintiffs.  Thus, if they are to establish causation, Plaintiffs must show that the detailers caused the doctor to prescribe the drug, a necessary element of causation that they do not allege.  Nor do they allege that the prescribing physician relied on any representations from the named detailers when making his or her decision to prescribe the drug.  Indeed, Plaintiffs do not even *identify* the relevant health care provider.

WL 31957424, *8 (D. Or. Mar. 1, 2002) (holding pharmaceutical detailers "merely an employee" of pharmaceutical company and was not strictly liable for drugs he promoted); *McCurtis v. Dolgencorp, Inc.*, 968 F. Supp. 1158, 1160-61 (S.D. Miss. 1997) (holding there was no reasonable basis to predict state law would impose strict liability upon the employees of businesses who sell products to consumers; "Such employees are not 'in the business of selling products' but rather are employed by companies that are 'in the business of selling products for use or consumption.'") (quoting RESTATEMENT (SECOND) OF TORTS § 402(A) (1965)).

### a.     The detailer employees are not "sellers" of prescription drugs under Texas law.

Only the "seller" of a product may be held strictly liable under Texas law for injuries caused to the end-consumer. *See, e.g., Firestone Steel Prods. Co. v. Barajas*, 927 S.W.2d 608, 613 (Tex. 1996) (explaining that only those engaged in the business of designing, manufacturing or selling a product, or otherwise introducing the product into the channels of commerce, are subject to strict products liability); *Armstrong Rubber Co. v. Urquidez*, 570 S.W.2d 374, 375 (Tex. 1978) (same). Likewise, only the "seller" is liable under a breach of warranty theory. *See, e.g., Klo-Zik Co. v. General Motors Corp.*, 677 F. Supp. 499, 507–08 (E.D. Tex. 1987) ("It is apparent that S&S does not qualify as a seller with regard to the trucks and may not be held on an implied warranty theory in that respect."); *Arceneaux v. Lykes Bros. Steamship Co., Inc.*, 890 S.W.2d 191, 196 n. 2 (Tex. App.—Beaumont 1994, writ denied) ("With respect to liability for breach of implied warranties, the fact that the product designer was not a seller of the product *is* dispositive. Implied warranties are given only by the actual sellers of products, not by others who have played some other role in the distribution of the product.") (emphasis in original).

A "seller" is one who is engaged in the business of distributing or otherwise placing the product into the stream of commerce. TEX. CIV. PRAC. & REM. CODE § 82.001(3) (defining "seller"); *see also Barajas*, 927 S.W.2d at 613; *Urquidez*, 570 S.W.2d at 375. Thus, it is not

enough that a party simply was a link in the chain of distribution that ultimately placed the product in the hands of a consumer. *See, e.g., Cobb v. Dallas Fort Worth Med. Center-Grand Prairie*, 48 S.W.3d 820, 826 (Tex. App.–Waco 2001, no pet.) (explaining that, for purposes of a strict liability claim, a hospital defendant was not "in the business" of selling transpedicular hardware used during surgical procedure; rather, product was connected with provision of medical services).

The evidence tendered with this removal establishes that the detailer defendants are not "sellers" of Celebrex®. The detailers are *employees* of the business (Pfizer) that allegedly distributed the product in question. *See, e.g.,* GUERRERO DECL. ¶ 3 (Exhibit 6A). Their job simply was to "make the physician aware of certain of Pfizer's products. . . ." *Id.* They never personally sold the drug to health care professionals, pharmacies, or anyone else, and did not have any involvement in the design, manufacture, or testing of Celebrex®. GUERRERO DECL. at ¶ 10 (Exhibit 6A); DAVIS DECL. at ¶ 10 (Exhibit 6B); JALUFKA DECL. at ¶ 11 (Exhibit 6C); NELSON DECL. at ¶ 11 (Exhibit 6D); HAHN DECL. at ¶ 11 (Exhibit 6E); VIAL DECL. at ¶ 11 (Exhibit 6F); TRUITT DECL. at ¶ 11 (Exhibit 6G); MCLUHAN DECL. at ¶ 12 (Exhibit 6H); RIOJAS DECL. at ¶ 11 (Exhibit 6I); MEZA DECL. at ¶ 4 (Exhibit 6J); BARINEAU DECL. at ¶ 10 (Exhibit 6K); ZEPLIN DECL. at ¶ 10 (Exhibit 6L); QUINONES DECL. at ¶ 10 (Exhibit 6M); GOODSON DECL. at ¶ 10 (Exhibit 6N); RODRIGUEZ DECL. at ¶ 10 (Exhibit 6O); SILVA DECL. at ¶ 10 (Exhibit 6P); PONCE DECL. at ¶ 10 (Exhibit 6Q); ESCOBAR DECL. at ¶ 10 (Exhibit 6R); GUIDRY DECL. at ¶ 12 (Exhibit 6S); TOWNSEND DECL. at ¶ 10 (Exhibit 6T); ADAME DECL. at ¶ 10 (Exhibit 6U). Further, it was Pfizer – their employer – that provided *all* of the information and material the field representatives used to "detail" Pfizer's drugs. *See, e.g.,* GUERRERO DECL. at ¶ 5.

In short, the detailers are in the business of providing services to, and are agents of, their employer, which, in turn, is in the business of putting particular products into the stream of

commerce. *See, e.g., Gordon*, 2006 WL 2337002, at *7 (holding that Pfizer field representatives "are not considered to be sellers or suppliers of the prescription drugs they represent" but are "simply a 'detailer' on behalf of [their] employer."); *DaCosta*, 2002 WL 31957424, *8 (holding detailer was "merely an employee" of pharmaceutical company and was not strictly liable for drugs he promoted); *McCurtis*, 968 F. Supp. at 1160 (holding there was no reasonable basis to predict state law would impose strict liability upon the employees of businesses who sell products to consumers; "Such employees are not 'in the business of selling products' but rather are employed by companies that are 'in the business of selling products for use or consumption.'") (quoting RESTATEMENT (SECOND) OF TORTS § 402(A) (1965)); *see also Crocker v. Winthrop Lab.*, 514 S.W.2d 429, 430, 433 (Tex. 1974) (holding pharmaceutical company liable under 402B misrepresentation theory as "seller" of prescription drug based on representations by its employee-agent drug sales representative). Even though the detailers' services might make information available to facilitate commercial distribution of Pfizer's products, they are not themselves subject to individual liability as the "seller" of their employer's prescription drugs.

Texas law is clear that service providers are not "sellers" under Texas law. *See, e.g., Ames v. Ford Motor Co.*, 299 F. Supp. 2d 678, 679 (S.D. Tex. 2003); *Loyd v. ECO Resources, Inc.*, 956 S.W.2d 110, 133 (Tex. App.–Houston [14th Dist.] 1997, no writ); *Neavauex v. Park Place Hospital, Inc.*, 656 S.W.2d 923, 926 (Tex. App.–Beaumont 1983, writ ref'd n.r.e.). Nor are entities that indirectly facilitate commercial distribution of a product, such as financing companies and financing "lessors," considered "sellers" under Texas law. *See, e.g., Cole v. Elliot Equip. Corp.*, 653 F.2d 1031, 1034-35 (5th Cir. 1981); *Willowbrook Foods, Inc. v. Grinnell Corp.*, 147 S.W.3d 492, 498 (Tex. App.–San Antonio 2004, pet. denied); *Wynn v. Kensington Mortgage and Fin. Corp.*, 697 S.W.2d 47, 50 (Tex. App.–Austin 1985, no writ). These principles of Texas law have equal applicability here, where the detailers supply only services to

their employer – the product's distributor – that might facilitate the product's distribution on behalf of the employer. *See Barajas*, 927 S.W.2d at 616 ("Imposition of strict liability demands more than an incidental role in the overall marketing program of the product.").

Furthermore, detailers have no ownership of or title to the drugs they promote, and Plaintiffs do not allege otherwise. The medications for which the detailers provide information are the company's, and it is the company that controls distribution into the stream of commerce. *Cf. FFE Transp. Serv. v. Fulgham*, 154 S.W.3d 84, 89 (Tex. 2004) (explaining that in providing refrigerated trailer to its contractor, company conferred "*only possession of the trailer, not a right of control*," and while in possession of the trailer, contractor "acted solely as [company's] agent to accomplish its business purpose.") (emphasis added); *Loyd*, 956 S.W.2d at 130 (stating that, under Texas law, "[t]he right of control is an important factor in determining the existence of a legal duty, and it is often the deciding factor.").

The Third Restatement makes the point more directly: "Persons assisting or providing services to product distributors, while indirectly facilitating commercial distribution of products, are not subject to liability under the rules of this Restatement." RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 20 cmt. g (1998) (emphasis added). In particular, "[s]ales personnel" are excluded from the class of those who "sell[] or otherwise distribute[]" a product, and are not subject to strict products liability. *Id.*; *see also* AM. L. PROD. LIAB. 3D § 5.45 (1987) ("[T]he 'sellers' [for purposes of strict liability] are the businesses, not employees who act solely as agents for their principals."). Although the Texas Supreme Court has not yet had occasion specifically to address section 20 or comment g, its rationale is consistent with Texas law, as discussed above. Moreover, as the Fifth Circuit has noted, "[t]he Texas Supreme Court has long looked to the Restatement of Torts as an influential guide in products liability law, and has recently heavily relied on the refinements in such law reflected in Restatement Third, Torts:

13

Products Liability." *Cimino v. Raymark Indus., Inc.*, 151 F.3d 297, 334 (5th Cir. 1998) (citing *McKisson v. Sales Affiliates, Inc.*, 416 S.W.2d 787, 788-89 (Tex. 1967); *Caterpillar Inc. v. Shears*, 911 S.W.2d 379, 381-83 (Tex. 1995); *Barajas*, 927 S.W.2d at 613, 616).[7]

For all of these reasons, Pfizer – and not any individual detailer – is deemed the "seller" of the drug.  Because the detailers are not considered "sellers" of the prescription pharmaceutical product at issue, they are not liable to Plaintiffs under Texas product liability or breach of warranty laws.  Indeed, to hold otherwise, and subject the individual employees to liability under such theories, would run contrary to the well-established notion that an agent is not subject to liability for torts committed by the agent's principal – "there is no principle of 'respondeat inferior.'"  RESTATEMENT (THIRD) OF AGENCY § 7.01 cmt. d (2006); *see also  Tri v. J.T.T.*, 162 S.W.3d 552, 562 (Tex. 2005) (explaining "'individual liability arises only when the officer or agent owes an independent duty of reasonable care to the injured party apart from the employer's duty.'") (quoting *Leitch v. Hornsby*, 935 S.W.2d 114, 117 (Tex. 1996)).  Consequently, there is no reasonable possibility Plaintiffs could recover against the detailers under these theories in state court.

> **b.    Even assuming the detailers could be considered "non-manufacturing sellers," the evidence establishes they are not liable to Plaintiffs.**

Even assuming *arguendo* that the detailers could be deemed "non-manufacturing sellers" under Texas law (and they cannot for the reasons stated above), as of 2003, Texas eliminated liability for "downstream" sellers who sold a product alleged to be defectively designed or

---

[7] Since the publication of the Third Restatement, various Texas courts, including the Texas Supreme Court, have cited various provisions of the Third Restatement as authoritative.  *See, e.g., Humble Sand & Gravel, Inc. v. Gomez*, 146 S.W.3d 170, 172 n.1, 2, 3, 183 n.23, 183 n.28, 185 n.41, 189 n.47, 191 n.52 (Tex. 2004) (citing §§ 2, 2 cmt. i, j; 6 cmt. B; 2(c)); *Bostrom Seating, Inc. v. Crane Carrier Co.*, 140 S.W.3d 681, 683 (Tex. 2004) (citing § 5); *Hernandez v. Tokai Corp.*, 2 S.W.3d 251, 257 n.9 (Tex. 1999) (citing § 2(b)); *Gen. Motors Corp. v. Sanchez*, 997 S.W.2d 584, 592 n.26 (Tex. 1999) (citing § 2 cmt. f); *Hyundai Motor Co. v. Rodriguez*, 995 S.W.2d 661, 666-67 n.23 (Tex. 1999) (citing § 2 cmt. n); *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 335 (Tex. 1998) (citing § 2(b)).

manufactured by another except in very limited circumstances, none of which are applicable

here.  Section 82.003(a) of the Texas Civil Practice and Remedies Code, as amended, now states:

(a)    A seller that did not manufacture a product is not liable for harm caused to
the claimant by that product unless the claimant proves:
(1)    that the seller participated in the design of the product;
(2)    that the seller altered or modified the product and the claimant's
harm resulted from the alteration or modification;
(3)    that the seller installed the product, or had the product installed on
another product and the claimant's harm resulted from the
product's installation onto the assembled product;
(4)    that:
(A)    the seller exercised substantial control over the content of a
warning or instruction that accompanied the product;
(B)    the warning or instruction was inadequate; and
(C)    the claimant's harm resulted from the inadequacy of the
warning or instruction;
(5)    that:
(A)    the seller made an express factual representation about an aspect
of the product;
(B)    the representation was incorrect;
(C)    the claimant relied on the representation in obtaining or using
the product; and
(D)    if the aspect of the product had been as represented, the
claimant would not have been harmed by the product or would
not have suffered the same degree of harm;
(6)    that:
(A)    the seller actually knew of a defect to the product at the time the
seller supplied the product; and
(B)    the claimant's harm resulted from the defect; or
(7)    that the manufacturer of the product is:
(A)    insolvent; or
(B)    not subject to the jurisdiction of the court.

TEX. CIV. PRAC. & REM. CODE ANN. § 82.003 (Vernon 2005).  Plaintiffs do not allege that the

detailers could be held liable under subsections (2), (3), or (7) of the statute.  Further, Pfizer's

evidence establishes that none of the other four possible exceptions – subsections (1), (4), (5),

and (6) – apply here with regard to the named representatives who detailed Celebrex®.  The

detailers had no involvement in the design of Celebrex® (as required by (1)); no control over

content of the package inserts or other written warnings (as required by (4)); made no

representations about Celebrex® to Plaintiff (as required by (5)); and had no knowledge that the

product was defective and did not "supply" the product to Plaintiff (as required by (6)). *See* GUERRERO DECL. at ¶¶ 5, 8-12 (Exhibit 6A); DAVIS DECL. at ¶¶ 5, 8-12 (Exhibit 6B); JALUFKA DECL. at ¶¶ 6, 9-13 (Exhibit 6C); NELSON DECL. at ¶¶ 6, 9-13 (Exhibit 6D); HAHN DECL. at ¶ 6, 9-12 (Exhibit 6E); VIAL DECL. at ¶¶ 6, 9-13 (Exhibit 6F); TRUITT DECL. at ¶¶ 6, 9-12 (Exhibit 6G); MCLUHAN DECL. at ¶¶ 7, 10-14 (Exhibit 6H);  RIOJAS DECL. at ¶¶ 6, 9-13 (Exhibit 6I); MEZA DECL. ¶¶ 4 (Exhibit 6J); BARINEAU DECL. ¶¶ 5, 9-12 (Exhibit 6K); ZEPLIN DECL. at ¶¶ 5, 8-11 (Exhibit 6L); QUINONES DECL. at ¶¶ 5, 7-12 (Exhibit 6M); GOODSON DECL. at ¶¶ 5, 8-11 (Exhibit 6N); RODRIGUEZ DECL. at ¶¶ 5, 8-12 (Exhibit 6O); SILVA DECL. at ¶¶ 5, 8-12 (Exhibit 6P); PONCE DECL. at ¶ 5, 8-12 (Exhibit 6Q); ESCOBAR DECL. at ¶¶ 5, 8-12 (Exhibit 6R); GUIDRY DECL. at ¶¶ 7, 10-14 (Exhibit 6S);  TOWNSEND DECL. at ¶¶ 5, 8-12 (Exhibit 6T); ADAME DECL. at ¶¶ 5, 8-12 (Exhibit 6U).  Thus, again, there is no reasonable possibility Plaintiffs could establish a claim against them in state court.  *See, e.g., Garcia v. Nissan Mtr. Co., Ltd.*, No. M-05-59, 2006 WL 869944, *4 (S.D. Tex. Mar. 30, 2006) (holding that undisputed declaration from non-diverse defendant establishing it lacked knowledge of defect that potentially could make it liable under § 83.002(a)(6) demonstrated improper joinder).

## 2.    *Plaintiffs' failure-to-warn and any misrepresentation-type claims also do not state cognizable claims against the detailers under Texas law.*

Although vaguely drafted, the gist of Plaintiffs' complaint against the detailers appears to be that they passed along – and did not correct – allegedly incorrect information provided by Pfizer regarding the safety and risk profile of Celebrex® to unidentified health care providers. *See, e.g.,* PETITION 5-6 (stating that detailer defendants "called on doctors and hospitals" regarding Celebrex® and "were in a position to make representations about the risks" associated with use of that drug).  These allegations fail to state viable claims under Texas law because they are based on the mistaken premise that the Pfizer representatives *individually* owed physicians (and patients) a duty to warn about risks of taking Celebrex®.  It is Pfizer – the seller of

16

Celebrex® – that owed a duty to warn prescribing physicians of known or foreseeable side effects associated with that drug.[8]  Pfizer contends that it fulfilled this duty, but even if it did not, the detailer employees are not personally liable for Pfizer's failure to warn.  Employees do not assume individual, personal liability in the absence of an independent duty merely by participating in their employer's alleged failure to provide adequate information about its products.  "'[I]ndividual liability arises only when the officer or agent owes an independent duty of reasonable care to the injured party apart from the employer's duty,'" *Tri v. J.T.T.*, 162 S.W.3d 552, 562 (Tex. 2005) (quoting *Leitch v. Hornsby*, 935 S.W.2d 114, 117 (Tex. 1996)), or when the agent knowingly participates in fraudulent or tortious conduct.  *See Kingston v. Helm*, 82 S.W.3d 755, 759 (Tex. App.—Corpus Christi 2002, pet. denied).

The duty to warn is owed by the product's "seller."  *Jaimes v. Fiesta Mart, Inc.*, 21 S.W.3d 301, 305 (Tex. App. – Houston [1st Dist.] 1999, pet. denied).  As discussed above, however, the detailers are not "sellers" of Celebrex® under Texas law, and owe no independent duty to warn apart from that owed by their employer.  *In re Diet Drugs Prods. Liab. Litig.*, No. 03-20546, 2004 WL 1535828, *10 (E.D. Pa. July 6, 2004) ("While the product's 'seller' owes the consumer a duty to warn of a product's dangers, [the pharmaceutical manufacturer], and not the sales representatives, was the 'seller.' . . . .  Accordingly, the sales representatives owed no independent duty to warn under Texas law."); *see also, e.g., In re Diet Drugs Prods. Liab. Litig.*, 220 F. Supp. 2d 414, 425 (E.D. Pa. 2002) ("[S]ales representatives are not considered 'sellers' under Mississippi law, but rather, employees of the businesses who are sellers.").

---

[8]  The learned intermediary doctrine establishes that Pfizer's duty is to communicate appropriate warnings to the prescribing physician; Pfizer had no duty to warn patients directly.  *See, e.g., Wyeth-Ayerst Labs. Co. v. Medrano*, 28 S.W.3d 87, 91 (Tex. App. – Texarkana 2000, no pet.).  Although Pfizer contends the detailer defendants owed no duty to warn, even if they did owe such a duty, the learned intermediary doctrine would apply to them as well.  *See In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 288-90 (S.D.N.Y. 2001)  (extending learned intermediary doctrine to detailers under Mississippi law); *Johnson v. Parke-Davis*, 114 F. Supp. 2d 522, 524-25 (S.D. Miss. 2000) ( same).

Indeed, pharmaceutical detailers cannot possibly owe an individual duty to warn. They have no control over the content of the FDA-approved (and FDA-mandated) package insert or other written warnings supplied to health care providers by Pfizer. *See, e.g.,* GUERRERO DECL. at ¶ 4 (Exhibit 6A). Even assuming, *arguendo*, that a detailer could be responsible for giving oral warnings, this would require unfettered, personal access to physicians, which detailers lack – some physicians refuse to meet with detailers at all; others meet with them for less than ten minutes. *Id.* at ¶ 3. Imposing on detailers an individual duty to warn would require them to spend their brief visits – assuming they even got one – reiterating every known side effect contained in the product's FDA-approved labeling in order to avoid practically unlimited personal liability. Moreover, it makes no sense to make a non-physician detailer personally liable for failing to give oral warnings to a medically-trained professional about a prescription drug that is exhaustively described in FDA-approved prescribing information in an FDA-approved format. For the reasons discussed above, Texas law does not require this absurd result.

Numerous Texas federal courts have held that prescription drug users have no reasonable possibility of establishing the personal liability of individual detailers based on these theories and have found that they are improperly joined in an action against their employer, the manufacturer. Even prior to the creation of MDL-1699, the late Judge Howell Cobb issued four different orders in the Celebrex®/Bextra® litigation finding improper joinder in cases removed to the Eastern District of Texas based on virtually identical allegations. *See Hebert v. Pfizer Inc.*, No. 1:05-CV-418-HC, slip op. at 1-2 (E.D. Tex. Aug. 18, 2005) (Exhibit 7A); *Pickens v. Pfizer Inc.*, No. 1:05-CV-528-HC, slip op. at 1-2 (E.D. Tex. Aug. 18, 2005) (Exhibit 7B); *Knight v. Pfizer Inc.*, No. 1:05-CV-529-HC, slip op. at 1-2 (E.D. Tex. Aug. 17, 2005) (Exhibit 7C); *Boudreaux v. Pfizer Inc.*, No. 1:05-CV-369-HC, slip op. at 1-2 (E.D. Tex. July 17, 2005) (Exhibit 7D).

Other Texas federal courts also have found that no viable claim existed against individual detailers when faced with substantially similar issues of improper joinder. *See, e.g., Budd v. Wyeth*, Case No. A-03-CA-465-SS, slip op. at 6 (W.D. Tex. Sept. 17, 2003) (Sparks, J.) ("[B]ecause the detailers do not have duty to research and ensure the safety [sic] fen-phen separate from Wyeth's duty, [plaintiff] does not have a reasonable possibility of success on her misrepresentation claims against the detailers under Texas law.") (Exhibit 7E); *Lewis v. Wyeth*, No. 1:03-CV-166-C, slip op. at 7 (N.D. Tex. Feb. 17, 2004) (Cummings, J.) (concluding that, under Texas law, plaintiff had "no reasonable possibility of success on any claims for negligence on the part of [Wyeth's] sales representatives.") (Exhibit 7F); *Northcutt v. Wyeth*, No. H-03-2665, slip op. at 5 (S.D. Tex. Aug. 13, 2003) (Rosenthal, J.) ("There is no allegation nor presentation of any facts that would create an independent duty owing from these individual employees to Northcutt, apart from the duty owing by Wyeth, that was violated.") (Exhibit 7G); *Nightingale v. Wyeth*, No. W-03-CA-203 (W.D. Tex. Sept. 5, 2003) (Smith, Jr., J.) ("Plaintiffs have identified no duty under Texas law which either Defendant owed to Plaintiffs or violated.") (Exhibit 7H); *Ferguson v. Wyeth*, No. 4:03-CV-5141 (S.D. Tex. Jan. 30, 2004) (Hoyt, J.) ("The Court is of the opinion that these sales representatives cannot warrant or make representations about pharmaceutical products that would override the disclosure that is required of and made by the manufacturer of the drugs.") (Exhibit 7I).  The detailer employees named in this case likewise are improperly joined.

Any negligent misrepresentation claim fails for an additional reason.  To recover for negligent misrepresentation, a plaintiff actually must have received and relied upon the alleged misrepresentation.  *Harco Energy, Inc. v. Re-Entry People, Inc.*, 23 S.W.3d 389, 396 (Tex. App. – Amarillo 2000, no pet.).  Plaintiffs have not alleged that the detailers made any representations

regarding Celebrex® directly to them. Indeed, the detailers' declarations confirm they did not.[9]

Nor have Plaintiffs even alleged that the detailers made any alleged misrepresentations to the

prescribing doctor that the doctor passed along to them. But Plaintiffs could not recover from

the detailers as an "indirect recipient" of a misrepresentation in any event. Texas has adopted

Section 552 of the Restatement (Second) of Torts, which limits liability for negligent

misrepresentation to "the person or one of a limited group of persons for whose benefit and

guidance [the defendant] intends to supply the information or knows that the recipient intends to

supply it[.]" RESTATEMENT (SECOND) OF TORTS § 552(2)(a) (1977); *Fed. Land Bank Ass'n of*

*Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991) (adopting Section 552). As interpreted by

Texas courts, "the Restatement requires actual knowledge of the recipient's identity and a

specific intent on the part of the alleged tortfeasor that the claimant would rely on the

misrepresentation." *Trans-Gulf Corp. v. Performance Aircraft Servs., Inc.*, 82 S.W.3d 691, 696

(Tex. App.–Eastland 2002, no pet.). Even a claim for fraud requires that the defendant intend

that the plaintiff receive and rely upon the allegedly false communication. *Great Plains Trust*

*Co.*, 313 F.3d at 322. Plaintiffs have not alleged (and cannot seriously contend) that the detailers

were aware of their specific identities, much less that they made representations to the

prescribing physician with the specific intent that they be repeated to, and relied upon by them.

　　　Finally, even if Plaintiffs could recover from the detailers for any statements they made

to Plaintiff's doctor, they do not allege that the doctor relied on them. This is an essential

element of their causation case – the alleged acts of the employees must have caused or

---

[9] *See* GUERRERO DECL. at ¶ 8 (Exhibit 6A); DAVIS DECL. at ¶ 8 (Exhibit 6B); JALUFKA DECL. at ¶ 9 (Exhibit 6C); NELSON DECL. at ¶ 9 (Exhibit 6D); HAHN DECL. at ¶ 9 (Exhibit 6E); VIAL DECL. at ¶ 9 (Exhibit 6F); TRUITT DECL. at ¶ 9 (Exhibit 6G); MCLUHAN DECL. at ¶ 10 (Exhibit 6H); RIOJAS DECL. at ¶ 9 (Exhibit 6I); MEZA DECL. at ¶ 4 (Exhibit 6J); BARINEAU DECL. at ¶ 8 (Exhibit 6K); ZEPLIN DECL. at ¶ 8 (Exhibit 6L); QUINONES DECL. at ¶ 8 (Exhibit 6M); GOODSON DECL. at ¶ 8 (Exhibit 6N); RODRIGUEZ DECL. at ¶ 8 (Exhibit 6O); SILVA DECL. at ¶ 8 (Exhibit 6P); PONCE DECL. at ¶ 8 (Exhibit 6Q); ESCOBAR DECL. at ¶ 8 (Exhibit 6R); GUIDRY DECL. at ¶ 10 (Exhibit 6S); TOWNSEND DECL. at ¶ 8 (Exhibit 6T); ADAME DECL. at ¶ 8 (Exhibit 6U).

contributed to the plaintiff having taken the drug. Thus, if they are to establish causation, Plaintiffs must allege (and show) that the detailers caused the doctor to prescribe the drug. Plaintiffs' omission of this causation element alone is fatal to any misrepresentation claim against the detailers. *See LaRue v. GeneScreen, Inc.*, 957 S.W.2d 958, 962 (Tex. App.— Beaumont 1997, writ denied) (affirming trial court's dismissal of negligent misrepresentation claim where plaintiff failed to plead reliance); *see also In re Rezulin*, 133 F. Supp. 2d at 283 (holding defendant detailers fraudulently joined under misrepresentation theory where plaintiffs failed to plead scienter or time and place of alleged misrepresentations).

### 3. *Any allegation of "knowing" misrepresentation or fraud against the local defendants also is rebutted by the detailers' sworn declarations.*

The detailers also are improperly joined because any allegation of "knowing" misconduct – and there is none – is rebutted by Pfizer's proof. The detailers' sworn declarations are clear that they "never intentionally misrepresented the safety, efficacy, or risk profile of Celebrex® to any health care provider or patient" and "never knowingly made a false or misleading statement about Celebrex® to any health care provider or Celebrex® user."[10] GUERRERO DECL. at ¶ 12 (Exhibit 6A); DAVIS DECL. at ¶ 12 (Exhibit 6B); JALUFKA DECL. at ¶ 13 (Exhibit 6C); NELSON DECL. at ¶ 13 (Exhibit 6D); HAHN DECL. at ¶ 12 (Exhibit 6E); VIAL DECL. at ¶ 13 (Exhibit 6F); TRUITT DECL. at ¶ 12 (Exhibit 6G); RIOJAS DECL. at ¶ 14 (Exhibit 6I); BARINEAU DECL. ¶ 12 (Exhibit 6K); ZEPLIN DECL. at ¶ 11 (Exhibit 6L); QUINONES DECL. at ¶ 12 (Exhibit 6M); GOODSON DECL. at ¶ 11 (Exhibit 6N); RODRIGUEZ DECL. at ¶ 12 (Exhibit 6O); SILVA DECL. at ¶ 12 (Exhibit 6P); PONCE DECL. at ¶ 12 (Exhibit 6Q); ESCOBAR DECL. at ¶ 12 (Exhibit 6R); TOWNSEND DECL. at ¶ 12 (Exhibit 6T); ADAME DECL. at ¶ 12 (Exhibit 6U). Indeed, all of the information and material the representatives used to detail Pfizer's drugs was derived exclusively

---

[10] One of the detailers named by Plaintiffs never marketed, distributed, sold, or promoted Celebrex®. *See* DECLARATION OF FRANCISCO MEZA ("MEZA DECL.") ¶ 4 (Exhibit 6J). That defendant never called on a single physician or health care provider regarding that drug. *Id.*

from the education provided to them by Pfizer. *See, e.g.,* GUERRERO DECL. at ¶ 5[11] (Exhibit 6A). They did not, as field representatives, conduct independent research regarding the drugs they detailed. *Id.* at ¶ 6. They have no knowledge that any of the information provided to them by Pfizer about Celebrex® is incorrect. *Id.* at ¶ 9.

The detailers' declarations negate any allegation that they knowingly participated in any tortious conduct. When presented with similar proof, Texas federal courts have held that it established that the individual pharmaceutical representatives were improperly joined. *See, e.g., Kollman v. Wyeth*, No. A-04-CA-034-SS, slip op. at 6-8 (W.D. Tex. Mar. 15, 2004) (holding non-diverse detailer defendant fraudulently joined where removing defendant had negated the facts that might form the basis for a state law claim against the detailer) (Exhibit 7J); *Lewis v. Wyeth*, No. 1:03-CV-166-C, slip op. at 7-8 (N.D. Tex. Feb. 17, 2004) (holding that plaintiff's fraud and misrepresentation claims were rebutted by declarations from non-diverse detailers and that those defendants were fraudulently joined) (Exhibit 7F); *Nightingale v. Wyeth, Inc.*, No. W-03-CA-203, slip op. at 3 (W.D. Tex. Sept. 5, 2003) (holding non-diverse detailer defendants fraudulently joined where plaintiffs had not presented anything to refute those defendants' sworn testimony that no misrepresentations were made regarding the uses of the drugs in question) (Exhibit 7H). Other federal courts have agreed. *See, e.g., Legg v. Wyeth*, 428 F.3d 1317, 1323-24 (11th Cir. 2005) (concluding that there was no reasonable possibility of recovery against nondiverse detailer where detailer had submitted sworn statement refuting plaintiff's claims and plaintiff had not provided any contrary evidence); *McCluskey v. Merck & Co., Inc.*, No. 07-AR-0232-S, slip op. at 11-13 (N.D. Ala. Mar. 7, 2007) (holding allegations of fraud and fraudulent misrepresentation rebutted by Pfizer detailers' uncontested declarations) (Exhibit 7K); *Gordon*, 2006 WL 2337002, at *7 (same); *In re Diet Drugs Prods. Liab. Litig.*, No. 03-20765, 2004 WL

---

[11] All of the representatives who detailed Celebrex® have attested to these same facts in their declarations.

1824357, *4 (E.D. Pa. Aug. 12, 2004) (holding that allegations of knowing participation in fraudulent or tortious conduct were rebutted by non-diverse detailer defendants' sworn testimony); *Sobkowski v. Wyeth*, No. 5:04-CV-96-Oc-10GRD (M.D. Fla. May 17, 2004) (magistrate's report and recommendation), *adopted by Sobkowski v. Wyeth*, No. 5:04-CV-96-Oc-10GRJ (M.D. Fla. June 24, 2004) (holding that plaintiff's fraud claim against non-diverse detailers did not defeat removal where allegations of fraud were rebutted by uncontested affidavits of detailers) (Exhibit 7L).

> **D.** **Further, Plaintiffs' conclusory allegations against the detailers, unsupported by any specific factual basis, are insufficient to state a claim against those defendants.**

"[P]leadings matter when fraudulent joinder . . . issues are decided." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 328 (5th Cir. 2002). Indeed, the United States Supreme Court recently emphasized that ordinary pleading rules "require[] a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Bell Atl. Corp. v. Twombly*, ___ U.S. ___, 127 S. Ct. 1955, 1965 n.3 (May 21, 2007) (addressing FED. R. CIV. P. 8). Thus, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action"; instead, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id*. at 1964-65.

In keeping with these principles, "[c]onclusory allegations, wholly lacking in specific factual support" are insufficient to defeat an improper joinder removal. *Jernigan v. Ashland Oil Co.*, 989 F.2d 812, 817 (5th Cir. 1993); *see also Great Plains Trust Co.*, 313 F.3d at 313 (stating that Fifth Circuit, in undertaking an improper joinder inquiry, "will not . . . 'accept as true conclusory allegations or unwarranted deductions of fact.'") (quoting *Collins v. Morgan Stanley*

*Dean Witter*, 224 F.3d 496, 498 (5ᵗʰ Cir. 2000)). "Failure to specify a factual basis for recovery against a non-diverse party constitutes a failure to state a claim and fraudulent joinder of that party." *Waters v. State Farm Mut. Auto. Ins. Co.*, 158 F.R.D. 107, 109 (S.D. Tex. 1994) (citing *Doe v. Cloverleaf Mall*, 829 F. Supp. 866, 870 (S.D. Miss. 1993)); *see also Kyger v. Veravest Investments, Inc.*, No. 4:04-CV-94-A, 2004 WL 1043111, *2 (N.D. Tex. May 6, 2004) ("Speculative and conclusory allegations do not state a cause of action without factual support. Fraudulent joinder will be found where a plaintiff has failed to plead any specific acts of negligence against the non-diverse defendant.") (citations omitted); *Staples v. Merck & Co.*, 270 F. Supp. 2d 833, (N.D. Tex. 2003) ("[W]hen plaintiffs make general allegations and fail to support them with specific, underlying facts, they have not established a reasonable basis for the Court to predict that relief may be granted.") (citation omitted); *Hernandez Castellanos v. Bridgestone Corp.*, 215 F. Supp. 2d 862, 864-65 (S.D. Tex. 2002) (concluding that terse, conclusory allegation of negligence against non-diverse defendant without any supporting factual allegations did not defeat removal); *Addison v. Allstate Ins. Co.*, 58 F. Supp. 2d 729, 732-33 (S.D. Miss. 1999) (concluding non-diverse defendant was fraudulently joined where plaintiff failed to allege any factual basis for claim of liability); *see also* FED. R. CIV. P. 9(b) (requiring averments of fraud to be pled with particularity).

Plaintiffs' Petition does not allege *any* case-specific fact supporting a claim against the detailers. For instance, Plaintiffs do not identify *a single doctor* whom the detailers purportedly misled, much less identify *where or when* such misrepresentations took place, the specific content of the representations, or how they caused their alleged injuries. Absent specific allegations tying the detailer employees to their claims, there is no reasonable basis to predict that Plaintiffs could recover against them under Texas law. *Cf. Staples v. Merck & Co., Inc.*, 270 F. Supp. 2d 833, 840-41 (N.D. Tex. 2003) ("In general, Plaintiffs cannot assert merely

speculative and conclusory allegations in order to sustain a valid negligent misrepresentation claim.") (citation omitted); *Sohmer v. American Medical Security, Inc.*, No. 3:02-CV-1680, 2002 WL 31323763, *2-3 (N.D. Tex. Oct. 15, 2002) (concluding that speculative and conclusory allegations of negligent misrepresentation did not support a cause of action against non-diverse insurance agency and finding agency fraudulently joined).

Plaintiffs' allegations are so devoid of specific fact, it is impossible even to tell how they are connected to the detailer defendants. For instance, as noted above, Plaintiffs do not identify the physician who allegedly prescribed the drugs. Under virtually identical circumstances, U.S. Magistrate Judge Dennis Green, of the Western District of Texas, recognized that this omission warrants a finding of improper joinder:

> First, as for all of Plaintiff's causes of action, she has failed to demonstrate the proper connection between Plaintiff and the detail representatives. Under Texas law, Plaintiff's complaint "must at least provide sufficient factual information that the defendant is able to prepare a defense." How can the detail representatives prepare for a defense in this case without the name of Plaintiff's physician?

U.S. Magistrate's Report and Recommendation, *Moffett v. Wyeth*, No. DR-03-CV-069, slip op. at 4 (W.D. Tex. Dec. 17, 2003) (internal citation omitted) (Exhibit 7M). The Court therefore held that "[b]ecause Plaintiff has failed to give sufficient factual information so that Defendant can prepare for a defense, a finding of fraudulent joinder is warranted."[12] *Id.* A similar conclusion also recently was reached by Judge Hilda G. Tagle in a removed case pending in the Southern District of Texas, Brownsville Division. *See Morrow v. Wyeth*, No. B-05-209, 2005 WL 2621555, at *5 (S.D. Tex. Oct. 13, 2005). Plaintiffs here likewise have failed to give sufficient information to demonstrate a connection between themselves and the detailers, warranting a finding of improper joinder.

---

[12] The District Court in *Moffett* elected to stay the case in order to permit the MDL court to resolve the jurisdictional issues; it consequently chose not to adopt the magistrate judge's report and recommendation. The MDL Court subsequently denied the plaintiff's remand motion after transfer. *See Moffett v. Wyeth*, No. 04-20181, slip op. (E.D. Pa. Sept. 10, 2004) (PTO 3925).

## IV.

### Amount in Controversy

The amount-in-controversy requirement of 28 U.S.C. § 1332(a) is plainly satisfied. Plaintiffs allege that, as a result of ingesting Celebrex®, Viola Resendez sustained serious and permanent injuries. PETITION at 2. They are seeking unlimited compensatory damages for, *inter alia*, physical pain and mental anguish, medical expenses, economic damages, loss of consortium, and loss of enjoyment of life. *Id.* at 16. They also seek unlimited punitive damages for Pfizer's alleged "gross negligence." *Id*. at 15-16. It is facially apparent from the petition that Plaintiffs seek recovery of an amount in excess of $75,000, exclusive of interest and costs. *See, e.g., De Aguilar v. Boeing Co.*, 11 F.3d 55, 57 (5th Cir. 1993) (stating that where it is "facially apparent" from the state-court petition that the amount in controversy exceeds the jurisdictional minimum, then the defendant need only point such fact out to successfully bear its burden ); *see also Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999) (concluding that district court did not err in finding that personal injury claims exceeded $75,000 where the claimant alleged "damages for property, travel expenses, an emergency ambulance trip, a six day stay in the hospital, pain and suffering, humiliation, and her temporary inability to do housework after the hospitalization."); *Morrow v. Wyeth*, No. B-05-209, 2005 WL 2621555, *3 (S.D. Tex. Oct. 13, 2005) (unpublished) (concluding that amount-in-controversy was satisfied in pharmaceutical product liability case where plaintiff alleged "severe injuries," including "serious injuries to his central nervous system"); *Matney v. Wenger Corp.*, 957 F. Supp. 942, 943 (S.D. Tex. 1997) (holding that a products liability complaint asserting claims for personal injury, past and future medical expenses, mental anguish, and exemplary damages met the amount-in-controversy threshold).

## V.

### Consent to Removal

The detailer defendants are improperly joined in an attempt to defeat diversity and prevent removal. Consequently, their consent is not required for removal. *See Jernigan v. Ashland Oil Inc.*, 989 F.2d 812, 815 (5th Cir. 1993); *Farias v. Bexar Co. Bd. of Trustees*, 925 F.2d 866, 871 (5th Cir. 1991). In any event, the only detailer to have been served at the time of removal (Defendant Goodson) consents to removal of this cause to this Court. *See Nixon v. Wheatley*, 368 F. Supp. 2d 635, 639 (E.D. Tex. 2005) (holding that statement in notice of removal that defendants, who were represented by the same counsel, joined the removal was sufficient to satisfy unanimity requirement). The consent of the unserved defendants is not required. *Getty Oil Corp. v. Ins. Co. of North Am.*, 841 F.2d 1254, 1262 n.9 (5th Cir. 1988).

## VI.

### Removal is Timely

Pfizer is the only properly joined defendant in this case, and all other defendants, as discussed above, are improperly joined. Pfizer was first served with citation on May 7, 2007, less than 30 days before its Notice of Removal is being filed. Accordingly, this removal is timely. *See* 28 U.S.C. § 1446(b); *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347–48 (1999).

## VII.

### Proper Court for Removal

The United States District Court for the Southern District of Texas, Corpus Christi Division, embraces Jim Wells County, the county in which the state court action is now pending. *See* 28 U.S.C. § 124(b)(6). Thus, this case is properly removed to this Court pursuant to 28 U.S.C. § 1441(a).

## VIII.

### Conclusion

Upon filing of this Notice of the removal of this cause, written notice of the filing is being given by Defendant to Plaintiffs and counsel, and is being filed with the Clerk of the state court in which this cause was originally filed, as required by 28 U.S.C. § 1446(d). A copy of those notices with proof of service of them is attached hereto as Exhibits 2(F) and 2(G).

WHEREFORE, Defendant Pfizer hereby removes the above-styled action pending against it in the 79th Judicial District Court of Jim Wells County, Texas, to this Honorable Court.

Respectfully submitted,


*/s/  Kenneth J. Ferguson*_____
Kenneth J. Ferguson
Attorney-in-charge
State Bar No. 06918100
Southern District I.D. No. 12703
CLARK, THOMAS & WINTERS
A PROFESSIONAL CORPORATION
P.O. Box 1148
Austin, Texas  78767
(512) 472-8800
(512) 474-1129 [Fax]
E-mail: kjf@ctw.com

*signed with permission by Leslie A. Benitez

**OF COUNSEL:**
Leslie A. Benitez
State Bar No. 02134300
Southern District I.D. No. 10017
E-mail: lab@ctw.com
Kelly R. Kimbrough
State Bar No. 00794984
Southern District I.D. No. 25675
E-mail: krk@ctw.com
J. Andrew Hutton
State Bar No. 24012878
Southern District I.D. No. 26762
E-mail: ah1@ctw.com
CLARK, THOMAS & WINTERS
A PROFESSIONAL CORPORATION
P.O. Box 1148
Austin, Texas  78767
(512) 472-8800
(512) 474-1129 [Fax]

**ATTORNEYS FOR DEFENDANTS**
**PFIZER INC. AND W. LANCE GOODSON**

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was filed electronically on the 5th day of June, 2007, and is available for viewing and downloading from the ECF system.  Notice of Electronic Case Filing has been sent automatically to all parties listed in the Service List in effect on the date of electronic filing, which constitutes service of same, and satisfies the requirements of Fed. R. Civ. P. 5(b)(2)(D).  Service on those parties who are not known to be users of the electronic filing system of the Southern District of Texas was accomplished in the manner listed below on June 5, 2007.

***Via Certified Mail/Return Receipt Requested***

Kathryn Snapka
Greg W. Turman
Richard B. Waterhouse, Jr.
Aditi Anita Shahani
SNAPKA, TURMAN & WATERHOUSE, L.L.P.
606 N. Carancahua, Suite 1511
Corpus Christi, Texas 78476
***Attorneys for Plaintiffs***

_____
          */s/ Leslie A. Benitez*